No. 25-3023

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

———————————————

CHICAGO HEADLINE CLUB, *et al.*,

*Plaintiffs-Appellees*,

v.

KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of
Homeland Security *et al.*,

*Defendants-Appellants*.

———————————————

Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:25-cv-12173—Sara L. Ellis, Judge.

_____

**PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO
DEFENDANTS-APPELLANTS' MOTION FOR A STAY PENDING APPEAL**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.     THE DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS .............. 3

     A.    The District Court's Decision Is Based On Review of a Vast Record Supporting Plaintiffs and Credibility Determinations Adverse to Defendants ........................ 3

     B.    The District Court Correctly Decided That Plaintiffs Are Likely To Succeed On the Merits ................................................................................................. 6

     C.    The Defendants' Arguments Lack Merit ............................................... 10

          1.    The Plaintiffs Have Standing ................................................... 10

          2.    The Defendants Admit the Injunction's Scope is Appropriate ............... 12

II.    DENYING A STAY WILL NOT INJURE THE DEFENDANTS ................................. 15

III.   A STAY WILL CAUSE IRREPARABLE HARM TO THE PLAINTIFFS .................. 17

IV.   EVERY EQUITY WEIGHS AGAINST GRANTING A STAY ..................................... 18

i

# INTRODUCTION

The Trump Administration has declared "war" on Chicago. R.80 ¶89. It has deployed federal agents as part of Operation Midway Blitz in northern Illinois, where they have used military weapons to inflict extreme and ongoing harm on civilians. Plaintiffs in this case are religious practitioners, demonstrators, observers, and journalists whom the Defendants targeted with violence because of the content of their speech, to suppress their dissent, and to block them from filming government agents and reporting the news. The government's violence against civilians in an American metropolis is unprecedented in modern history.

Recognizing the emergency, the district court entered a temporary restraining order, which was extended *at the government's own request*, and then a preliminary injunction, which is now appealed. The injunction grants the government wide leeway to enforce immigration laws and to exercise executive authority, but blocks Defendants from using illegal force—consistent with Defendants' own policies—against Plaintiffs engaged in constitutionally protected activities in the Northern District of Illinois. The injunction has been in place more than a month, the government has not sought relief from it in this Court, and Defendants have affirmed that it does not encumber their work. The request for an emergency stay departs on dubious footing.

There is no basis for a stay. The district court's conclusion that Plaintiffs will likely succeed on the merits is sound. The court found the Plaintiffs routinely have been tear gassed, sprayed with chemical munitions, shot with rubber bullets at close range, and otherwise brutalized, without any justification and based on the content of their speech. Those findings were based on a detailed review of dozens of declarations, hundreds of hours of video, thousands of pages of documents, extensive briefing, and hearings featuring live testimony. That expansive record is good reason to defer to the district court's finding that nearly unrebutted evidence supports the Plaintiffs and that the government's imagined parade of horribles is unsupported. Indeed, the government ignores

1

almost all of the record in its motion. Moreover, the district court's decision turned heavily on credibility determinations—namely, that the government's witnesses are not credible, and that the Defendants lied and submitted false evidence in support of their position—which this Court should not disturb. This Court should not intervene on an emergency basis to stay a correct district court decision, grounded in credibility determinations, and particularly not when the government has unclean hands.

The equities also weigh strongly against a stay. There is no harm to the government caused by the preliminary injunction, which respects executive authority, while preventing ongoing violent behavior by federal agents that far exceeds the bounds of federal law. In our system of divided power, courts enforce constitutional limits when another branch missteps. Complying with the Constitution is not a harm. And again, Defendants have admitted the injunction does not impede their work.

Meanwhile, a stay would cause irreparable harm to the Plaintiffs. It would allow the government to continue its unrelenting pattern of violence against Plaintiffs to stop them from practicing activities that are privileged above all others by our Constitution. The government is shooting pepper balls at praying Plaintiffs; indiscriminately tear gassing Plaintiffs demonstrating, assembling, expressing dissent, observing and recording its activities; and preventing Plaintiffs from gathering news by using extreme physical force against journalists and by dispersing reporters unlawfully. The government's conduct is abhorrent to a free society, the injunction imposes enforceable legal constraints, and this Court should not issue a stay that will promote further lawlessness.

## ARGUMENT

A stay pending appeal is "extraordinary relief" and the requesting party bears a "heavy burden of proof." *Winston-Salem/Forsyth County v. Scott*, 404 U.S. 1221, 1231 (1971). The government here must show "a significant probability of success on the merits; that it will face irreparable harm absent a stay; and that a stay will not injure the opposing party and will be in the public interest." *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir.2006). The government must show *both* a strong likelihood of success *and* that irreparable harm will occur during appeal. Defendants cannot establish either factor and this Court can deny the stay on either ground. Additionally, a stay is inappropriate because any harm the government might suffer absent a stay pales in comparison to the harm that a stay would cause to the Plaintiffs. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## I.      THE DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS

After a month of intensive litigation, the district court decided based on a vast record that Plaintiffs will likely show the Defendants are violating their rights under First and Fourth Amendments and the Religious Freedom Restoration Act. That assessment was correct, and there is no reason for this Court to displace it now, particularly given that the decision turned heavily on an analysis of evidence that this Court cannot conduct in this posture: an assessment that the government's evidence is "simply not credible." R.256-8.

### A.      The District Court's Decision Is Based On Review of a Vast Record Supporting Plaintiffs and Credibility Determinations Adverse to Defendants

The district court's decision is based on a careful review of an expansive evidentiary record, which includes more than 80 declarations, hundreds of hours of video (from civilians and from Defendants), thousands of pages of documents and briefing, lengthy hearings, depositions, and live testimony.

Both sides submitted evidence to support their competing positions. Plaintiffs testified in court and recounted the violence inflicted upon them when they engaged in protected activities. R.255-24:22-25:29, 107:19-24, 110:1-5, 130:13-18. Declarations, photos, and video evidence corroborated Plaintiffs' in-court testimony. R.22-73, 77, 190. The Court found there "is nothing that plaintiffs set forth in their declarations or testimony that defendants rebutted, even with the body cam footage." R.256-8.

Meanwhile, Defendants argued that the force used against Plaintiffs was "more than exemplary" and necessary to quell violence. R.236-156:4-10. After reviewing the evidentiary record, the district court recognized the government was asking for a finding that "the Chicagoland area is in a vice hold of violence, ransacked by rioters and attacked by agitators"; a claim the district court found to be "simply untrue" and belied by "the government's own evidence." R.256-7-8.

Deference is particularly warranted because the district court's decision turned on credibility determinations. "[A]fter reviewing all of the evidence submitted and listening to the testimony," the trial court found "defendants' evidence simply not credible." R.256-8. The district court reached this conclusion after comparing Defendants' contentions to its own review of "hours and hours and hours" of footage submitted by the government. *Id.* 8:8. The district court pointed out numerous contradictions, *id.* 8:12-21, 9:1-8, 9:9-12, 9:16-19, 9:20-24, 9:25-10:5, 10:6-11, 6:12-15, 15:21-23, 18:1-3, 21:3-5, and found these contradictions called "into question everything that defendants say they are doing in their characterization of what is happening either at the Broadview facility or out in the streets of the Chicagoland area during law enforcement activities," *id.* 10:16-20.

The district court also found Defendants lied repeatedly and submitted false evidence in support of their case. R.256-9:06-08 (noting Defendant Bovino "lied"); *id.* 9:20-24 (finding agents falsely reported that a person threw a bike at them in Albany Park, when video evidence revealed that the agent threw the bike and its owner to the ground, after Defendants deployed gas); *id.* 21:3-6 (noting videos submitted did not support the government's contention that a protester grabbed an agent's genitals); *id.* 10:6-15 (finding the government's only witness at the preliminary injunction hearing provided false testimony about what he said on body cam footage); see also R.196-1-7 (documenting numerous instances where Defendants made misleading statements or were caught in outright lies regarding their uses of force). Of particular importance, the district court found that Defendant Bovino, the commander of Operation Midway Blitz, lied repeatedly in sworn testimony. R.256-9 (finding that "Defendant Bovino admitted that he lied. He admitted that he lied about whether a rock hit him before he deployed tear gas in Little Village."); *id.* ("Defendants claim deploying gas was justified, in part, because fireworks were thrown at them; video shows, however, that is simply not true."); *id.* (finding that "Defendant Bovino obviously attacks and tackles Scott Blackburn to the ground. But Bovino, despite watching this video, says that he never used force against [him], and later denied seeing a projectile hit Reverend Black after watching that video.").

On appeal, Defendants ignore these findings. They do not explain why the district court was wrong—let alone clearly erroneous—nor do they attach to their motion "originals or copies of affidavits or other sworn statements supporting facts subject to dispute" or the "relevant parts of the record." FRAP8(a)(2)(B).[1] Instead, Defendants rely entirely on declarations of two government officials, Russell Hott and Daniel Parra. Motion 3-4 (citing R.173-1&173-2), who

---

[1] Plaintiffs asked to confer with Defendants about the record that would be provided to this Court, but Defendants filed before responding.

were both subject to adverse credibility findings. R.256-8:6-7, 9:25-10:05, 26:14-15. They sat for depositions and contradicted their declarations or admitted they were not based on personal knowledge.[2] R.277 & 278 (Parra and Hott depositions). Indeed, multiple judges in the Northern District have concluded these same witnesses are unreliable. *Illinois v. Trump*, 2025 WL 2886645, at *5 (N.D. Ill. Oct. 10, 2025), *aff'd*, 2025 WL 2937065, at *5 (7th Cir.Oct. 16, 2025). Defendants cannot simply ignore the record, advance discredited evidence, and ask for a stay.

Credibility findings receive "substantial deference," and are disregarded only if "clearly erroneous," meaning "wholly unsupported by the evidence." *United States v. Griffin*, 84 F.3d 912, 930 (7th Cir.1996). The record amply supports the district court's credibility findings, and the government does not attempt to establish clear error. Furthermore, the district court heard extensive live testimony, and "only the trial judge can be aware of the variations in demeanor and tone of voice" that inform credibility findings. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985); *id.* (Rule 52(a) demands "even greater deference" to credibility findings); *U.S. v. Contreras*, 820 F.3d 255, 263 (7th Cir.2016). This Court should not disturb the district court's credibility findings, and when evaluating Plaintiffs' likelihood of success on the merits, this Court should accept the conclusion that Defendants' assertion that their use of force was directed at violent actors was not credible.

## B.     The District Court Correctly Decided That Plaintiffs Are Likely To Succeed On the Merits

Based on the unrebutted record and its credibility determinations, the district court correctly found Plaintiffs are likely to succeed on the merits of their (1) First Amendment claim

---

[2] For example, Hott declared that protestors vandalized a downspout in Broadview, but the district court found that not credible because Hott testified at his deposition "that he didn't even know if it was a person who cause that damage, much less a protestor." R.256-9:25-10:05. Meanwhile, Parra declared that agents provided warnings to observers that they would deploy tear gas after agents ran a woman over, but body camera footage showed that "nothing was said to the crowd." *Id.* 15.

that Defendants unlawfully restricted their speech, assembly, and press in public fora; (2) First Amendment claim that Defendants retaliated against them for engaging in protected activity; (3) Fourth Amendment claim that Defendants are using excessive force against them; and (4) RFRA claim that Defendants substantially burdened their religious exercise. The likelihood of success, of course, is an issue this Court will consider in this appeal. But putting the cart before the horse, the government contends that its likelihood of winning all of these claims is so strong that it is entitled to the "extraordinary relief" of a stay. *Winston-Salem*, 404 U.S. at 1231. But the government does not come close to carrying its "heavy burden of proof." *Id.* On some of the district court's conclusions, the government offers no argument whatsoever.

**1. First Amendment Access**. Public ways like streets and sidewalks "occupy a special position in terms of First Amendment protection because of their historic role as sites for discussion and debate." *McCullen v. Coakley*, 573 U.S. 464, 476–77 (2014).

The district court found that Plaintiffs are engaged in protected First Amendment activities, and Defendants' tactics are neither content neutral nor narrowly tailored. R.256-28-30. As to content discrimination, the trial court found Defendants "target[ed]" protesters in response to Plaintiffs being "open and vocal about their dislike for defendants' actions" and even "permitt[ed] exclusive access to journalists who portray them in a more favorable light," but "tackled and arrested" media who did not. R.256-28-29. These findings are supported by Plaintiffs' evidence about the content of their speech, *id.*, as well as Defendants' own admissions such as Secretary Noem's order that "the more people protest, the harder ICE is going to come after them," *id.* 29. In short, defendants have "consistently expelled and targeted plaintiffs with various uses of force who hold signs, chant, shout, and otherwise assemble against Operation Midway Blitz." *Id.*

The court also rightly found that Defendants' tactics were not sufficiently tailored to satisfy either strict or intermediate scrutiny. *Id*. 30-31. Drawing from an extensive record including "hours and hours" of Defendants' "best" video footage, the trial court found that Plaintiffs acted nonviolently and within the scope of the law and that in only a few instances did individuals assault federal officers. *Id.* 14, 28. Yet Plaintiffs were indiscriminately and repeatedly subjected to tear gas, pepper balls, and other munitions. Using indiscriminate force against a non-violent crowd "as a prophylactic measure" is not "[t]he proper response," *Cox v. Louisiana,* 379 U.S. 536, 551 (1965), absent some "clear and present danger," *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). Time after time, there was no credible evidence of such danger, R.256-26, and so the trial court found that Defendants burdened "substantially more speech than necessary" to further its interests. *Turner Broadcasting Sys. v. FCC*, 520 U.S. 180, 189 (1997).

**2. First Amendment Retaliation**. The court rightly found that Plaintiffs are likely to prevail on their retaliation claim by showing (1) they engaged in protected First Amendment activity; (2) they suffered a deprivation that would likely deter future First Amendment activity; and (3) the First Amendment activity was a motivating factor in Defendants' decision to retaliate. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir.2009). Defendants have used tear gas, pepper balls, flash-bang grenades, and pepper spray against Plaintiffs, which "would chill a person of ordinary firmness from continuing to exercise their First Amendment rights." *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 827 n.4 (9th Cir.2020). The district court correctly found Plaintiffs' protected activities were a motivating factor in Defendants' actions. R.256-29-32 (noting Defendants have expressed an intent to "go hard against people for 'the way they're talking, speaking, who they're affiliated with … and what they're talking about'" and that "defendants do not deny that they would treat pro-ICE demonstrators more favorably"); *cf. Massey*

*v. Johnson*, 457 F.3d 711, 717 (7th Cir.2006) (circumstantial proof supports finding retaliatory motive); R.256-9:4-5, 14:7-8, 32:14-16, 29:21-22, 34:10-14. The district court's finding of retaliatory motive is supported by ample evidence, and it is not mistaken, let alone "clearly erroneous." *Int'l Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 447 (7th Cir.2022).

**3. RFRA**. RFRA "prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means." *Tanzin v. Tanvir*, 592 U.S. 43, 45 (2020). A substantial burden occurs when government action applies "substantial pressure on an adherent to modify his behavior." *Korte v. Sebelius*, 735 F.3d 654, 682 (7th Cir.2013). Firing pepper balls at praying ministers is a graphic example of Defendants pressuring Plaintiffs to change religious behavior. R.256-34. Plaintiffs have indeed modified their behavior due to this pressure. Father Brendan Curran, for example, has excluded certain practitioners from prayer vigils held at the Broadview facility due to the risk of violence. *Id.*

**4. Fourth Amendment**. Determining whether a use of force is "reasonable" under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). There is nothing reasonable about using tear gas, pepper balls, and flash-bang grenades against groups of non-violent protesters, clergy, and reporters. *Escobedo v. Bender*, 600 F.3d 770, 786 (7th Cir.2010) (clearly established that rounds of tear gas and flash bangs absent immediate threat violates Fourth Amendment); *Graham v. Hildebrand*, 203 F.App'x 726 (7th Cir.2006) (pepper spraying non-violent group is excessive force). Dozens of Plaintiffs experienced these tactics despite presenting no threat to officers.

9

R.256-10-21. Nor is it reasonable for officers to point their guns at individuals presenting no danger. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir.2009). But, as the district court recognized, several Plaintiffs reported having guns pointed at them despite presenting no threat to officers. R.256-13, 14, 17, 21, 24, 32, 36-37.[3]

### C.     The Defendants' Arguments Lack Merit

To demonstrate they are entitled to a stay pending appeal, Defendants have a steep hill to climb: they must establish, contrary to the district court's conclusion, a "significant probability of success on the merits." *Hinrichs*, 440 F.3d at 396. Included in this burden is showing the district court's factual findings—which Defendants simply ignore—are "clearly erroneous." *Retired Chicago Police Ass'n v. Chicago,* 76 F.3d 856, 862 (7th Cir.1996). The government's arguments about its likelihood of success lack merit, and, regardless, this Court should evaluate them through the normal appellate process.

### 1.     The Plaintiffs Have Standing

Plaintiffs have standing to seek injunctive relief. The Government contests only whether Plaintiffs have suffered an injury-in-fact.

The court rightly found Plaintiffs' "injuries are likely to recur so as to warrant injunctive relief," and the "risk of future injury is not speculative." R.256-22. Drawing on over 80 declarations, evidence of TRO violations (R.57; 89; 90; 94; 118; 140; 201; & 220), hearing testimony (R.255), and Defendants' own video evidence—the court found an "ongoing and sustained pattern" of Defendants' conduct, that Defendants engaged in an "officially sanctioned course of retaliation," and these actions are likely to continue. R.256-22. This Court must defer to

---

[3] The government overreads *Torres v. Madrid*, which limited its analysis to shootings and did not consider tactics like "pepper spray, flash-bang grenades, lasers, and more." 592 U.S. 306, 317 (2021).

these findings (and the government has forfeited challenging them anyway). *Jorman v. Veterans Admin.*, 830 F.2d 1420, 1426 (7th Cir.1987).

The trial court's findings correctly invoke governing law. As the government acknowledged below, standing can be shown based upon an "officially sanctioned" course of retaliation. R.173-22 (citing *Fiorenzo v. Nolan*, 965 F.2d 348, 350 (7th Cir.1992)). Standing can also be established via Defendants' "persistent pattern of targeting disfavored speech." *Schirmer v. Nagode*, 621 F.3d 581, 588 (7th Cir.2010). The trial court's finding of both an officially sanctioned course of retaliation and a persistent pattern of targeting, supported by ample evidence, was entirely correct.[4]

The trial court further found Plaintiffs, as both protestors and religious adherents have standing based on the "chilling effect of defendants' conduct." R.256-23. The trial court pointed to the testimony of Leslie Cortez, who had a gun pointed in her face for observing Defendants' actions, and Reverend Black, who after being shot in the head with pepper balls, was hesitant to protest and "even then, it was hard for him." *Id.* 24. The record is replete with both live testimony and sworn declarations echoing the same. E.g., R.255-22-23, 34-38; R.22-6 ¶24; R.22-8 ¶20; R.73-6 ¶41; R.73-7 ¶23, R.22-12 ¶27; R.22-3 ¶13; R.73-14 ¶¶ 25-27; R.73-2 ¶33; R.22-16 ¶42; R.22-17 ¶15. "Chilled speech is, unquestionably, an injury supporting standing." *Bell v. Keating,* 697 F.3d 445, 453 (7th Cir.2012); *RCFP v. Rokita*, 147 F.4th 720, 728 (7th Cir.2025).[5]

---

[4] Given the fact finding here, the government's citation to *Los Angeles v. Lyons*, 461 U.S. 95 (1983), is misplaced. A pattern of suppressing expression or officially sanctioned retaliation renders harm non-speculative. As the trial court found, the *Lyons* plaintiff could at least hypothetically avoid a future chokehold by following traffic laws. Plaintiffs have no such recourse and "cannot avoid injury, as they are being threatened and harmed for exercising their constitutional First Amendment rights and acting firmly within the bounds of the law." R.256-23. *Lyons* also does not apply to First Amendment claims. *Secretary of State v. Joseph Munson Co.*, 467 U.S. 947, 956 (1984).
[5] Contrary to the government's suggestion, Plaintiffs' evidence of a chilling effect was not subjective whim. Instead, as the trial court found, invoking the objective standard, Defendants' acts of violence

### 2.      The Defendants Admit the Injunction's Scope is Appropriate

The injunction does not superintend the day-to-day operation of DHS, is appropriately tailored to redress Plaintiffs' injuries caused by Defendants' actions, and, according to the Defendants' own admissions, is workable. First, Defendants have repeatedly admitted that the TRO imposed no workability problems. Part II, *infra*. That judicial admission binds Defendants, and it precludes their lawyers from now contending, opposite their sworn testimony, that the injunction is hard to implement. *Murrey v. U.S.*, 73 F.3d 1448, 1455 (7th Cir.1996).

 Second, Defendants misconstrue the injunction and allege it "reaches all DHS immigration-enforcement action in the Chicago area." Motion 12. Not so. As the district court noted, the injunction does not tell Defendants who to hire, how to staff their operations, or where to target their operations. R.256-44. Defendants do not explain how the injunction possibly implicates 8 U.S.C. § 1252(f), but as the trial court emphasized, the injunction does not address the government's authority to enforce immigration laws. *Id.* 40-42. Any impact on operations would, at most, be collateral, *id.* 42, which is entirely permitted. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554 n.4 (2022).

The injunction compels Defendants to abide by the Constitution; it does not dictate how those underlying operations are conducted. When law enforcement systematically violates the Constitution, it is the function of the Judicial Branch to enforce the law to prevent concrete harms. *Marbury v. Madison*, 5 U.S. 137, 163, 177 (1803). This has happened recently, after protests in 2020, without upending law enforcement. R.196-39 n.25.   Third, Defendants argue that the injunction is "unworkable" as it prohibits officers from using crowd control devices in all situations in which they might wish to do so. Motion 15-16. The trial court's findings otherwise

---

"would cause a reasonable person to think twice about exercising their fundamental constitutional rights," which is a chilling effect. R.256-23.

are entitled to deference and further supported by the expert opinion of former CBP Commissioner Gil Kerlikowske that the injunction is workable. R.22-32 ¶¶34-37, 77-78, 89. The district court relied on this declaration, R.256-30, but Defendants have not attempted to rebut it here or below.

Fourth, Defendants object that that the injunction does not contain an "exception for protecting property or for where protestors block the only ingress or egress points available to federal officers." Motion 15. That contention ignores the court's order. The district court noted "individuals who have committed isolated acts of vandalism, assault on, or threatening officers, forcible obstruction, may be arrested and prosecuted." R.256-26:16-19. What federal agents *cannot* do is use excessive force indiscriminately against those assembling to exercise their First Amendment rights. Defendants also complain the injunction places an onerous burden on officers to determine "whether there is time for one warning (much less two) in a rapidly evolving situation" before deploying certain weapons. Motion 15-16. The injunction, in fact, allows for officer discretion, providing that an officer must give two audible warnings "unless justified by exigent circumstances when immediate action is necessary in order to preserve life or prevent catastrophic outcomes, as defined by DHS Use of Force Policy." R.250-1(l). Making such determinations is not unworkable; law enforcement officers do it every single day.

Finally, the injunction is not overbroad under *Trump v. CASA*, 606 U.S. 831 (2025). "The equitable tradition has long embraced the rule that courts generally 'may administer complete relief *between the parties*.'" *Id.* 851. To avoid a universal injunction, "the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* 852. In some situations, providing plaintiffs with complete relief will have the practical effect of incidentally benefiting nonparties, even incidentally. *Id.* In this respect, CASA broke no new

ground in this Circuit, as this Court has long acknowledged that injunctive relief might incidentally benefit third parties where, as here, "it is not possible to award effective relief to the plaintiffs without altering the rights of third parties." *McKenzie v. Chicago*, 118 F.3d 552, 555 (7th Cir.1997).

The district court acknowledged that *CASA* generally prohibits universal injunctions, R.256-42-43, and noted its obligation to "ensure that it does not issue an injunction broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* Consistent with *CASA*, the trial recognized injunctions necessary to provide "complete relief to plaintiffs" may "necessarily incidentally benefit other protestors, journalists, and religious figures present at protests." *Id.* 43. The government has forfeited any challenge to this finding by not addressing it in its motion. Providing Plaintiffs with complete relief, even if doing so incidentally benefits non-parties, is consistent with the law of remedies, particularly in the First Amendment context. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). So too here: a district-wide remedy is necessary to ensure that Plaintiffs' speech is not further chilled by threat of being held at gun point, shot with pepper balls, or subjected to tear gas if they protest the government's actions in front of their homes (Lakeview), daycares (Logan Square), and parks (Albany Park). Like a public nuisance, where stopping unlawful conduct in a suit by one plaintiff will benefit the entire community, the preliminary injunction here benefits the community, albeit incidentally, by ensuring that the plaintiffs themselves have complete relief. *CASA*, 606 U.S. at 851.[6]

---

[6] The government has omitted the trial court's discussion of *CASA*, and its fact findings applying the complete-relief rule. That is forfeiture. Instead, the government discusses class certification, which is a distraction. The class certification order is not properly appealed under Rule 23(f)., and while class certification is another basis to affirm, *id.* at 849-50, the trial court's order does not depend on class certification, R.256-43.

14

Defendants' "workability" arguments are contradicted by their own testimony, contradict the district court's findings, and misapply the law. This Court should reject them.

## II.    DENYING A STAY WILL NOT INJURE THE DEFENDANTS

The district court found that the preliminary injunction will not harm Defendants. R.256-46:19-22. "Defendants have already been operating under the rules of the temporary restraining order for the last 28 days," the court noted, and they have never articulated any harm from doing so. *Id.* Defendants do not argue that the district court's finding on this point was clearly erroneous. Instead, in a sentence they assert, "As demonstrated, the district court's injunction interferes with officers' ability to respond to disruptive protests in the Chicago region." Motion 21. No record evidence backs up that assertion, and the government attaches none to its motion.

The TRO was entered five weeks ago, and the government has operated under the terms of that restraint, which it has characterized as "very similar" to the preliminary injunction. R.255-295:9. Contrary to arguing that the TRO caused harm, the government asked the district court to extend the TRO for two weeks. R.51. Once the district court entered a preliminary injunction, the government waited days to file its supposed emergency stay motion. Moreover, this is not the only injunction restraining Defendants' conduct: they have been operating under an even more restrictive injunction in Los Angeles since September 10, and the Ninth Circuit denied a stay of that injunction on October 22, 2025. *L.A. Press Club v. Noem*, No.25-5975, Doc. 16 (9th Cir.). In all this time, Defendants have not articulated a single concrete harm they have experienced because of the injunctive relief and cannot point to any record evidence of harm.

Instead, Defendants have repeatedly stated, on the record and under oath, that the injunction is easy to follow and does not interfere with immigration law enforcement. Defendant Bovino testified the TRO was having "no effect on Operation Midway Blitz" and did not interfere with law enforcement activities. R.236-95:3-96:6; see also R.144-24:14-16; 32:22-33:4 (Bovino

testifying there was no problem with Defendants complying with the TRO and "all the accoutrements that are contained therein"); R.277-155:506 (Hott testifying "there really were no challenges in implementing" the TRO); R75-17:22-18:10, 25:23-28:23, 45:25-46:6, 73:6-76:14, 84:1-14, 95:25-96:6 (CBP supervisor Harvick and ICE supervisor Byers testifying that the TRO was consistent with their agencies' policies already in force); R.255-216-221 (CBP agent Hewson testifying that nothing in the TRO impeded his law enforcement activities, and his agents "have already been doing whatever was in the TRO."). Again, Defendants cannot repeatedly proclaim under oath that the injunction poses no problem and then send their attorneys to argue that the injunction must be stayed because of the problems it poses. *Murrey*, 73 F.3d at 1455.

The most Defendants muster is an assertion that "officers may be unable to differentiate between members of the press, peaceful protestors, and violent rioters, especially where there is imminent physical danger to officers and the public," Motion 15, and that their "real-time judgements about who is covered by the injunction or whether one of its legalistic exceptions applies may now be second-guessed in contempt proceedings," Motion 16. But the possibility of contempt is not irreparable harm. *Cf. Dep't of Educ. v. California*, 604 U.S. 650, 652 (2025) ("[S]elf-imposed costs are not properly the subject of inquiry on a motion for stay[.]"). The district court carefully crafted an order to afford Defendants the ability to enforce immigration law, while also protecting Plaintiffs' rights. Defendants' unsubstantiated fear that contempt proceedings may be used to target legitimate law enforcement is speculative, "and such speculation does not establish irreparable harm." *Nken,* 556 U.S. at 434.

Finally, Defendants cannot be irreparably harmed by an "injunction that merely ends an unlawful practice." *Rodriguez v. Robbins,* 715 F.3d 1127, 1145 (9th Cir.2013); see also *Joelner v. Washington Park,* 378 F.3d 613, 620 (7th Cir.2004) ("[T]here can be no irreparable harm … when

16

[government] is prevented from enforcing an unconstitutional statute."). The injunction does not harm Defendants.

## III.    A STAY WILL CAUSE IRREPARABLE HARM TO THE PLAINTIFFS

Defendants have inflicted extreme and irreparable harm on Plaintiffs, and a stay would permit Defendants to continue their horrendous violations of Plaintiffs' rights, causing further irreparable harm. The district court found an "ongoing and sustained pattern of conduct that plaintiffs have documented over the last month and even after I entered the TRO, this conduct shows no signs of stopping." R.256-22:15-17. That decision was based on a huge record of evidence showing Defendants inflicting physical injuries and chilling expression. *Id.* 37:16-38:21. As examples, the district court highlighted Leslie Cortez who had a gun pointed at her for documenting agents' activities at a Home Depot, a man who "was shot with rubber bullets as he shepherded his girlfriend and 4-year-old daughter home," a man who suffered a traumatic brain injury after agents tackled him without warning while he was observing federal agents, and a bystander in Evanston whom agents "shoved to the ground, put a knee on his back, bashed his head into the street, and punched him in the head at least two times." *Id.* 12:15-23, 17:22-25, 19:10-13, 20:25-21:2. Defendants shot Plaintiff Reverend Black seven times, including twice in his head, with pepper balls while he was praying outside the Broadview facility. R.255-130:22-23. Emily Steelhammer described Defendants hitting press Plaintiffs with rubber bullets, tear gas, and chemical weapons. *Id.* 32:4-7.

Harm is irreparable if legal remedies "are inadequate, meaning they are seriously deficient as compared to the harm suffered," *DM Trans v. Scott*, 38 F.4th 608, 617 (7th Cir.2022), and the evidence in the record establishes "serious injuries that money damages cannot remedy." *Fire Fighters*, 56 F.4th at 453. The government's continued use of unlawful force against Plaintiffs

engaged in protected First Amendment activities inflicts irreparable harm, for "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 145 S.Ct. 2332, 2364 (2025). The same is true of the Defendants' ongoing use of unreasonable force against the Plaintiffs, *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir.1978) ("[C]ontinuing constitutional violation constitutes proof of an irreparable harm"), and Defendants' violations of RFRA. *See Burwell v. Hobby Lobby Stores*, 573 U.S. 682 (2014). Moreover, Defendants have been inflicting fear, pain, and psychological injuries on Plaintiffs, which are also considered irreparable harms. *Fire Fighters*, 56 F.4th at 452.

If the injunction were stayed, Defendants' continuing pattern of illegal conduct would resume, resulting in irreparable harm to the Plaintiffs. Worse still, a stay would stop the district court from even assessing whether the Defendants are continuing to engage in illegal conduct, emboldening Defendants to engage in more lawless behavior. This Court should reject the government's call for executive branch impunity, and it should uphold the district court's decision to protect Plaintiffs from irreparable harm.

## IV.    EVERY EQUITY WEIGHS AGAINST GRANTING A STAY

The remaining equities weigh against a stay. First, the government has unclean hands. As detailed above in Part I(A), *supra*, Defendants have lied and presented false evidence, which disentitles them to equitable relief. While "equity does not demand that its suitors shall have led blameless lives ... it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument v. Automotive Maintenance Machinery*, 324 U.S. 806, 814-15 (1945).

Second, Defendants have openly defied the district court's orders. R.256-22:15-17 (finding a "sustained pattern" of TRO violations); *id.* 17:21-25 (Bovino violated the TRO himself); see also R.57; 89; 90; 94; 118; 140; 201; 220 (documenting reams of violations). Indeed, Plaintiffs contend

their defiance continues to this day. R.272. This Court should not intervene to benefit executive agents acting lawlessly and disrespecting judicial authority. *NLRB v. Neises Const.*, 62 F.4th 1040, 1056 (7th Cir.2023) (affirming an order crafted in response to the Defendant "flout[ing]" the court's orders). To do so would undermine the rule of law and respect for judges in this Circuit.

Third, the public interest weighs in favor of sustaining the district court's order, which protects "[s]peech by citizens on matters of public concern," *Lane v. Franks*, 573 U.S. 228, 235 (2014). Such speech "lies at the heart of the First Amendment." *Id.* at 235-36. "The interest at stake is as much the public's interest in receiving informed opinion as it is the [Plaintiffs'] own right to disseminate it." *San Diego v. Roe*, 543 U.S. 77, 82 (2004).

Given the absence of evidence that Defendants are being restricted from enforcing any laws, "'the public interest in ensuring that the Government can enforce the law free from estoppel [is] outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.'" *Bartko v. SEC*, 845 F.3d 1217, 1227 (D.C.Cir.2017) (quoting *Heckler v. Community Health*, 467 U.S. 51, 60–61 (1984)); Baude & Bray, *When the Executive Has Unclean Hands*, 135 Yale L.J. Forum 1, 19 (2025), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5680222.

## CONCLUSION

The Federal Rules provide there is no automatic right to stay an injunction pending appeal. FRCP62(c). Stays are the exception. *Nken*, 556 U.S. at 433. There is no reason for a stay here, and there are many reasons a stay would cause harm. This Court should deny the motion.

RESPECTFULLY SUBMITTED,

/s/ Steve Art

*One of Plaintiffs-Appellees' Attorneys*

Jon Loevy                                    Craig B. Futterman

Locke Bowman
Steve Art
Heather Lewis Donnell
Scott Rauscher
Justin Hill
Alexandra Wolfson
**LOEVY + LOEVY**
311 N. Aberdeen Street
Chicago, Illinois 60647
(312) 243-5900
steve@loevy.com

Elizabeth Wang
Isaac Green
**LOEVY + LOEVY**
2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
**LOEVY + LOEVY**
% Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Wallace Hilke
**COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC**
Bluhm Legal Clinic, Northwestern
Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224
wally.hilke@law.northwestern.edu

**MANDEL LEGAL AID CLINIC**
University of Chicago Law School
6020 S. University
Chicago, IL 60637
(773) 702-9611
futterman@uchicago.edu

Hayden Johnson
Katie Schwartzmann
Conor Gaffney
Shalini Goel Agarwal
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave NW, Ste 163
Washington DC 20006
(202) 579-4582

Daniel Massoglia
Hannah C. Marion
**FIRST DEFENSE LEGAL AID**
601 S. California Ave.
Chicago, IL 60612
(336) 575-6968
daniel@first-defense.org
hannah@first-defense.org

Kevin M. Fee, Jr.
Rebecca Glenberg
Hirsh M. Joshi
Priyanka Menon
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740
kfee@aclu-il.org
rglenberg@aclu-il.org

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 12-point Century Schoolbook style font, a proportionally spaced typeface. This brief contains 5,901 words.

Dated: November 13, 2025

/s/ Steve Art
*Plaintiffs-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2025, the Response to Defendants' Motion for a Stay Pending was filed with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 13, 2025

/s/ Steve Art_____
*Plaintiffs-Appellees*