No. 25-3023

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————

CHICAGO HEADLINE CLUB, et al.,
                        Plaintiffs-Appellees,

v.

KRISTI NOEM, in her official capacity as Secretary, U.S. Department
of Homeland Security, et al.,
                        Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Northern District of Illinois

———————————

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL AND
IMMEDIATE ADMINISTRATIVE STAY**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney
  General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
COURTNEY L. DIXON
DAVID L. PETERS
  *Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 598-6735*

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.    The Government Is Likely To Prevail On The Merits. ......................................... 2

    A.    Plaintiffs Lack Standing. ............................................................................... 2

    B.    The Injunction Is Overbroad And Unworkable. ......................................... 4

    C.    Plaintiffs' Claims Lack Merit. ....................................................................... 7

II.    The Remaining Factors Decisively Favor The Government. ............................. 10

CONCLUSION ............................................................................................................... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

The district court's sprawling injunction imposes a laundry-list of intrusive requirements on federal law-enforcement officers operating throughout the Chicago area. The government's stay motion established that the injunction has no basis in law, is overbroad and unworkable, and offends the separation of powers. In response, plaintiffs fall back on the district court's (as-yet incomplete) factual findings and credibility determinations, but most of those findings and determinations have nothing to do with plaintiffs' claims, and none rehabilitate the injunction's fundamental legal defects. Plaintiffs' attempt to downplay the injunction's harms to the government and the public interest is no more successful. The district court's temporary restraining order has exposed the grave problems with a judge superintending day-to-day law-enforcement operations. And the preliminary injunction is more onerous, establishing the district court as a roving commission to arbitrate the lawfulness of all uses of force by federal officers in the Chicago area, whether or not a named plaintiff is involved.

Once more, the district court has "infringe[d] on the separation of powers" by "set[ting] the court up as a supervisor" of the Executive, Order, *In re Noem*, No. 25-2936 (7th Cir. Oct. 31, 2025), and, once more, this Court's intervention is required.

## ARGUMENT

**I.  The Government Is Likely To Prevail On The Merits.**

The government is likely to prevail on the merits of this appeal because plaintiffs lack standing to seek prospective relief, the injunction is overbroad and unworkable, and the court's merits rulings are flawed and cannot support the relief granted.  Stay 8-21.  Rather than persuasively address these legal arguments, plaintiffs repeatedly mischaracterize them as attempts to relitigate the district court's factual findings.  Resp. 3-6, 12-13.  To be clear, the government disagrees with those findings, which are not only erroneous, but also incomplete and subject to "further explan[ation]," DE250, at 1—a violation of the requirements for issuing a preliminary injunction that alone warrants a stay (or, at least, an administrative stay until the court completes its work).  But even accepting those findings does not support the injunction, and plaintiffs fail to grapple with its legal flaws.

**A.  Plaintiffs Lack Standing.**

Plaintiffs allege that they suffered harm from the deployment of crowd-control devices during protests at the Broadview facility in September and early October.  A few individual plaintiffs also allege that they suffered harm when they happened to witness immigration-enforcement actions while, for instance, on the way "to the gym."  DE80, at 10.  But standing for prospective relief "does not exist merely because plaintiffs experienced past harm and fear its recurrence."  *Noem v. Vasquez Perdomo*, 2025 WL 2585637, at *2 (U.S. Sept. 8, 2025) (Kavanaugh, J., concurring)

(citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Plaintiffs must show "an objectively reasonable likelihood" of future injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

Plaintiffs have failed to make that showing. No injury is likely to recur at Broadview—where most of plaintiffs' claims arise—because federal officers have "not deploy[ed] any" crowd-control devices since non-federal officials took "responsibility [for] crowd control and arrests" at the facility. DE173-1, at 37. Plaintiffs do not dispute this point. And as for the other one-off incidents that plaintiffs invoke, there is no indication that "the same events are likely to happen" *to those plaintiffs* in the future. *Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004).

Plaintiffs assert that standing exists because the government has an "officially sanctioned" practice of deploying excessive and retaliatory force. Resp. 11. That is wrong: DHS policy expressly prohibits officers from using force unless "objectively reasonable," DE173-3, at 2, and from "profil[ing], target[ing], or discriminat[ing] against any individual for exercising his or her First Amendment rights," DE35-3. Anyway, standing for prospective relief requires more than a showing that allegedly improper conduct occurs "routinely" or pursuant to a government "policy." *Lyons*, 461 U.S. at 105. Plaintiffs must show that they—not others—face a "realistic threat" of the allegedly improper conduct occurring again, *id.* at 106 n.7, which they fail to do.

Plaintiffs cannot avoid Article III's requirements by invoking the First Amendment, as this Court has made clear in applying *Lyons* even where First

3

Amendment activity is implicated. *See Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010). Plaintiffs ignore this precedent. *See* Resp. 11 n.4. Nor can plaintiffs invoke "subjective 'chill'" of First Amendment activity as a substitute for establishing a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Plaintiffs' invocation of abstract "fear" is no better, *Noem*, 2025 WL 2585637, at *2, given that plaintiffs have continued to protest, including at Broadview, without suffering any alleged harm from defendants.[1]

**B.     The Injunction Is Overbroad And Unworkable.**

**1.** The injunction contravenes the party-specific principles of *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), because it expressly grants "relief that extend[s] beyond the parties." *Id.* at 843. Plaintiffs contend that the injunction is necessary to afford them "complete relief" and only "incidentally" advantages nonparties. Resp. 13. But "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *CASA*, 606 U.S. at 854. Even so, neither the district court nor plaintiffs explain why an injunction limited to the named plaintiffs failed to provide them complete relief. The injunction instead applies to any future immigration-enforcement operation anywhere in the Chicago area, regardless of whether any named plaintiff will be present. That does far more than benefit nonparties only "incidentally." Contrary to plaintiffs, this is nothing like a "public nuisance," and

---

[1] Plaintiffs nowhere argue that the organizational plaintiffs have standing.

plaintiffs cannot leverage certain individuals' alleged harm from officers' conduct to purportedly "benefit the entire community." Resp. 14.

The court's flawed class certification order also cannot support the injunction's scope. The class is overbroad, vague, and fails Rule 23's commonality and typicality requirements. Plaintiffs offer no response to those arguments.

**2.** The injunction is also unworkable in practice because it places inflexible and legalistic restrictions on federal law-enforcement officers, backed by the threat of contempt. Plaintiffs do not meaningfully address the injunction's impracticalities, such as how officers are to identify "Journalists" based on the injunction's vague and non-exhaustive "indicia," or to ensure protestors hear warnings in dangerous and rapidly-evolving circumstances. DE250, at 1-5. Instead, plaintiffs suggest that the injunction mirrors DHS policies, Resp. 16, but the injunction imposes restrictions— from uniform requirements to use-of-force restraints—beyond what DHS policies provide. And even as to the provisions that resemble DHS policies, the injunction places the district court in the position of superintending officers' compliance with those policies in unpredictable circumstances on pain of contempt. *See EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) (explaining that such "obey-the-law injunction[s] depart[] from … traditional equitable principle[s]"). Indeed, this is already playing out in practice: plaintiffs have *already* alleged violations of the injunction—notably, based on incidents away from Broadview that in no way involved any named plaintiffs. DE272, at 1-5.

5

Plaintiffs' argue that the injunction resembles the district court's TRO, which was in effect for several weeks. Resp. 15. But the experience of the TRO only underscores the workability problems here. The government endeavored to comply with the overbroad TRO ahead of the preliminary injunction hearing.[2] But during that time, plaintiffs filed more than a half-dozen alleged violations with the court (and raised many more with the government), diverting law-enforcement resources to investigate the alleged incidents and requiring protracted litigation over them, even though none involved the named plaintiffs or the Broadview facility. The district court also *sua sponte* modified the TRO multiple times to add additional requirements. And, under the guise of supervising compliance, the court ordered multiple DHS officers to appear to answer court-directed questioning, including requiring a senior official to "appear in court, in person" to "report" daily to the court, DE146, at 1, an order this Court correctly quashed because it "infringe[d] on the separation of powers," Order, *In re Noem*, No. 25-2936 (7th Cir. Oct. 31, 2025). The government promptly appealed the court's (even more onerous) preliminary injunction.

Plaintiffs' reliance on statements from individual DHS officers also does not advance their argument. Resp. 14-15. The statements merely confirm that those officers have endeavored to comply with the court's orders—including the TRO—

---

[2] The government never requested the TRO be extended. *Contra* Resp. 1; *see* DE51, at 10:1-7. And the government opposed extending the TRO beyond the 28 days provided for in Rule 65.

6

while also carrying out their duties to enforce the law. *See, e.g.*, DE255, 216:9-11 (explaining that "we were already abiding by the TRO"). The officers were not speaking to the legal effects of the orders or on behalf of the government more broadly. *See id.* at 221:23-222:8. Indeed, the government has consistently identified the impracticalities of those orders as well as the ways they endanger officers and the public. DE173, at 37-38. That federal officers have endeavored to follow the court's orders while continuing to execute the law hardly amounts to a concession that this extraordinary injunction poses no burden on the government.

    **3.** Finally, plaintiffs fail to grapple with the grave separation-of-powers concerns the injunction poses. As explained, the injunction places the district court in the untenable position of micromanaging the day-to-day operations of DHS officers responding to crowds in rapidly evolving and dangerous environments. But it is the role of the Executive, under the direction of the President, to oversee the execution of the laws, not the federal courts. The injunction flouts that basic principle.

    **C.  Plaintiffs' Claims Lack Merit.**

Plaintiffs also cannot rehabilitate the district court's flawed merits rulings, which are premised on incomplete factual findings and conclusions of law. Nor do plaintiffs explain how those merits rulings—even if credited—justify the sprawling injunction entered here.

    **1.  First Amendment.** Plaintiffs repeat the district court's conclusion that the government's crowd-control efforts infringed their speech and news-gathering

7

rights. Law enforcement, however, may take reasonable steps to disperse crowds where an "immediate threat to public safety, peace, or order, appears." *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940). Plaintiffs emphasize that the district court found no such circumstances justified dispersals here. Resp. 13. But as explained, Stay 18, the court applied the wrong standard in reaching that conclusion, reasoning that not even actual violence or threats of "serious injury" sufficed. DE256, at 16:7-9, 26:24-25. Law enforcement need not await bodily harm or public disorder to protect themselves and the public, and even plaintiffs concede that "individuals assault[ed] federal officers." Resp. 8. Nor must officers address threatening or disruptive protestors individually, as plaintiffs suggest, Resp. 13, because in such circumstances, officers "may deal with the crowd as a unit," *Washington Mobilization Comm. v. Cullinane*, 566 F.2d 107, 120 (D.C. Cir. 1977).

Plaintiffs' arguments regarding the retaliation claims are equally unavailing. The district court inferred that officers acted with retaliatory intent despite an obvious alternative explanation—namely, that any purported injury incidentally resulted from neutral crowd-control efforts. Plaintiffs suggest that animus can be inferred from a handful of statements made by the Secretary and others. Resp. 8. But when viewed in context, the statements merely reflect concern with violence directed at DHS

8

officers.³ They are not inconsistent with, and do not purport to override, DHS policies prohibiting First Amendment retaliation.

In all events, plaintiffs never explain how their First Amendment claims can justify the relief ordered here. Even assuming that isolated incidents involved officers using force improperly, that in no way justifies attributing First Amendment violations to the defendants as a whole. Nor does it justify the entry of this injunction, which imposes restrictions—including what uniforms officers must wear, when body-worn cameras must be activated, and under what circumstances journalists may be ordered to disperse—that have no grounding in the First Amendment.

2. **Fourth Amendment.** Plaintiffs are likewise wrong that the government's use of crowd-control devices amounted to unlawful seizures. At most, such devices were deployed with the intent to "*disperse* or *exclude* persons from an area," which does not "involve the necessary 'intent to *restrain*' that might give rise to a 'seizure.'" *Puente v. City of Phoenix*, 123 F.4th 1035, 1052 (9th Cir. 2024). Plaintiffs point to cases involving individual arrests where courts treated the use of analogous devices as seizures, *see* Resp. 9, but that only confirms that whether officers "manifest[] an intent to restrain" is a context-specific inquiry, *Torres v. Madrid*, 592 U.S.

---

³ *See Transcript: How Kristi Noem and Gregory Bovino defend effort to 'hammer' protesters*, WBEZ Chicago (Nov. 6, 2025), https://perma.cc/E253-YM7B (telling officers that the agency was "going to go hard" against individuals "advocating to harm not just you and your colleagues, but your families").

9

306, 317 (2021). And here, the use of crowd-control devices were not "aimed at *detaining* or *confining* [plaintiffs], even temporarily." *Puente*, 123 F.4th at 1053.

Again, however, even assuming individual officers committed unlawful seizures, the "normal[] and adequate" remedy would be retroactive individualized relief, *Campbell*, 373 F.3d at 835, not a sweeping and categorical injunction. As plaintiffs admit, the Fourth Amendment requires a fact-intensive "balancing," Resp. 9, which is why it is improper for a court to write and impose a new police-operations manual in the guise of enforcing the Constitution.

**3.    RFRA**. Similar flaws underscore plaintiffs' RFRA claims. Plaintiffs nowhere explain why the religious practitioners' beliefs required that they intersperse themselves amongst the disruptive Broadview protests, as opposed to elsewhere near the facility. At most, defendants' efforts to manage those protests restricted "one of a multitude of means" by which plaintiffs could practice their beliefs, which does not constitute a substantial burden. *Henderson v. Kennedy*, 253 F.3d 12, 15 (D.C. Cir. 2001). And even if these individual plaintiffs established a RFRA violation, that would hardly support this sweeping injunction.

## II.    The Remaining Factors Decisively Favor The Government.

As discussed, the injunction immediately and irreparably harms the government by interfering with officers' ability to respond to disruptive protests. As explained above, the government did not forego entitlement to a stay of the injunction by declining to appeal what the district court characterized as an unappealable TRO

10

while awaiting the preliminary-injunction hearing. Had the government appealed the TRO, plaintiffs surely would have argued that it was an unappealable order. Under plaintiffs' theory, litigants would be forced to appeal every TRO, lest they risk a court concluding that they face no irreparable harm from a later-imposed injunction. Nor can the government be faulted for filing this stay motion within two business days of the court's order, particularly where no opinion has yet issued and the court's still-incomplete findings and conclusions were merely read into the record. Simply put, the extraordinary injunction harms the government and the public interest alike.

    Plaintiffs, by contrast, have not shown that they face any threat of future harm to support standing, much less that they would suffer harm were the injunction stayed pending appeal. Plaintiffs attempt to manufacture harm by invoking alleged violations of the injunction—again, based on incidents having nothing to do with the named plaintiffs or the Broadview facility. Resp. 18-19. That only underscores that the injunction has transformed claims by a few individual plaintiffs into an instrument for judicial micromanagement of federal law-enforcement operations throughout the Chicago area. This Court's prompt intervention is once more required to stay this untenable injunction, protect the safety of the public and law-enforcement officers, and restore the balance of power between the Executive and Judicial Branches.

## CONCLUSION

The Court should stay the preliminary injunction pending appeal and should grant an administrative stay pending consideration of this motion.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

YAAKOV M. ROTH
   *Principal Deputy Assistant Attorney*
      *General*

ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
COURTNEY L. DIXON
 /s/ *David L. Peters*
DAVID L. PETERS
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 598-6735*
   *David.l.peters@usdoj.gov*

NOVEMBER 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,588 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

　　　　　　　　　　　　　　　　　　*/s/ David L. Peters*
　　　　　　　　　　　　　　　　　　David L. Peters

## CERTIFICATE OF SERVICE

  I hereby certify that on November 14, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system on all counsel of record.

                */s/ David L. Peters*
                David L. Peters